Albert BINDER; Estelle Binder, in their individual capacities and on behalf of one or more classes of persons similarly situated, Plaintiffs–Appellants,

v.

Thomas GILLESPIE; Marie Mullen Gillespie; T. Gordon Sim; Diane L. Karban; John A. Good, Defendants,

Ian R. Wilson; Cary S. Fitchey; Mark L. Stevens; Deloitte & Touche; Mark Stevenson, Defendants–Appellees.

No. 97–35943.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1998.

Decided March 30, 1999.

Robert H. Bretz, Marina del Ray, California, for the plaintiffs-appellants.

Jeffery J. Ventrella, Elam & Burke, Boise, Idaho, for defendants-appellees Wilson, Fitchey, and Stevens.

Lois D. Thompson and Erik M. Silber, Proskauer Rose, Los Angeles, California, for defendant-appellee Deloitte & Touche.

Before: SKOPIL, FARRIS, and REINHARDT, Circuit Judges.

Opinion by Judge SKOPIL; Dissent by Judge REINHARDT.

SKOPIL, Circuit Judge:

Albert Binder brought this action against Aqua Vie Beverage Corporation (AVBC), various AVBC officers and directors, and the accounting firm of Deloitte & Touche (Deloitte), asserting, on his own behalf and as a representative for a class of investors, that defendants violated federal and state securities laws. The district court decertified the class and declined to exercise supplemental jurisdiction over the related state law class claims. The court also granted summary judgment in favor of three AVBC officers and directors and for Deloitte on all of Binder's individual claims. Final judgments were entered pursuant to Federal Rule of Civil Procedure 54(b). We affirm.

## I.

Tom Gillespie and Marie Mullen Gillespie formed AVBC in 1991 by purchasing a publicly owned shell corporation and merging it with their Hawaii-based beverage company, KWC, Inc. They moved their operations to Sun Valley, Idaho. Shortly thereafter, Diane Karban joined the company as Chief Financial Officer and Deloitte was hired as the company's accounting firm. AVBC stock soon began trading publicly on the over-the-counter (OTC) market.

In the summer of 1991, Cottell Bottling agreed to manufacture, and Golden Brands agreed to distribute, AVBC's product— "lightly flavored," noncarbonated spring water. Industry publications touted AVBC as a promising, if speculative, investment, and AVBC stock sold for $2.75 per share by August. On September 24, 1991, Binder purchased 3000 shares at $4.00 per share. A month later, AVBC's bid price reached its peak at $4.50 per share.

AVBC began production in 1992. Chief of quality control John Good, however, warned CEO Tom Gillespie and consultant Gordon Sim that there was instability in the product formula. Sixty days after it was bottled, the water turned brown. AVBC adjusted the formula but continued to experience problems with the product's shelf life. By the end of the year, AVBC was forced to repurchase the defective water from Golden Brands, which eventually resigned as AVBC's distributor and sued for past-due debts.

In 1993, AVBC struggled to raise funds and to establish a distribution network for its product. On December 29, 1993, Binder sold his 3000 shares at less than one dollar per share. In 1994, AVBC suspended operations, and Binder filed this action. Default was entered against the Gillespies and, later, a default judgment for $5736.00. All remaining parties, except for defendants AVBC and the Gillespies, consented to proceedings before a magistrate judge.

In February 1995, the action against AVBC was stayed pending Chapter 11 bankruptcy proceedings.

Chief Magistrate Judge Mikel H. Williams decertified the class of AVBC investors and dismissed all federal and state class claims. He also granted summary judgment on all of Binder's individual federal and state claims against Deloitte and AVBC officers and directors Ian Wilson, Mark Stevens, and Cary Fitchey. The court entered final judgments pursuant to Rule 54(b). Meanwhile, Binder's individual actions against the remaining defendants are pending in district court.

## II.

■■ We begin our inquiry by examining whether we have jurisdiction to consider Binder's appeal. A magistrate judge may conduct civil proceedings and order the entry of judgment if the parties consent. 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b). If the parties fail to consent in writing, the magistrate judge does not have jurisdiction and any judgment entered is a nullity. See Aldrich v. Bowen, 130 F.3d 1364, 1365 (9th Cir.1997). A notice of appeal from such a judgment does not transfer jurisdiction to the court of appeals. See Estate of Conners v. O'Connor, 6 F.3d 656, 658 (9th Cir.1993). Here, however, all parties to this appeal signed a stipulation consenting to proceedings before a magistrate judge. Accordingly, we conclude that Chief Magistrate Judge Williams had jurisdiction over this action and entered valid judgments. The notice of appeal properly conferred jurisdiction to this court.

## III.

■ Judge Williams ruled that claims by the class—AVBC investors who purchased stock between August 1, 1991 and February 28, 1994—must be dismissed because the class could not, as a matter of law, satisfy all elements of a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission (SEC) Rule 10b-5(b), 17 C.F.R. § 240.10b-5. A successful securities fraud action requires proof of (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately causes the alleged loss. See Gray v. First Winthrop Corp., 82 F.3d 877, 884 (9th Cir.1996).

The district court reasoned that the class would have to satisfy the reliance element through a presumption; otherwise individual questions of reliance would predominate over questions common to the class. See FED. R. CIV. P. 23(b)(3); Basic Inc. v. Levinson, 485 U.S. 224, 242, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (noting that individualized proof of reliance by each class member would preclude a class action). The court concluded that no presumption was available under the facts of the case, and, accordingly, decertified the class for the period until December 1993.

After that date, when AVBC stock began trading on the Boston Stock Exchange, Judge Williams acknowledged that the class might qualify for a presumption of reliance; however, he elected to decertify the class for the remaining period between December 1993 and February 28, 1994 on the ground that the class could not prove causation. That decision resulted in the dismissal of all class claims based on federal law and, because the court declined to exercise supplemental jurisdiction, it ended the state law class claims as well.

### A.

■ Binder argues that the class is eligible for a presumption of reliance pursuant to Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Such a presumption is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact. See Kramas v. Security Gas & Oil, Inc., 672 F.2d 766, 769 (9th Cir.1982) (recognizing Affiliated Ute rule). The district court, however, charac-

terized Binder's action as "not primarily an omissions case" and held that the *Affiliated Ute* presumption was unavailable. We agree with the district court's characterization of Binder's action. Binder's complaint contains both allegations of omissions and misrepresentations, and at the very least, must be characterized, as the district court noted, as "a mixed case of misstatements and omissions."

We have applied the *Affiliated Ute* presumption to cases that "are, or can be, cast in omission or non-disclosure terms." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975); *see also Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 694 (9th Cir.1977). We have not squarely decided, however, whether the presumption may be invoked in a case involving misrepresentations or both omissions and misrepresentations. *See Little v. First Cal. Co.*, 532 F.2d 1302, 1305 n. 4 (9th Cir.1976) (noting that "[t]he categories of 'omission' and 'misrepresentation' are not mutually exclusive" and that a case involving a "representation from which material facts are omitted" presents "a true dilemma" because the plaintiff must show reliance, whereas the plaintiff in a pure omissions case may rely on the presumption); *Kramas*, 672 F.2d at 769 n. 2 (noting that whether the presumption applies to misrepresentations had already been "twice reserved"). Nevertheless, in *Blackie*, we embraced the presumption because of the difficulty of proving "a speculative negative"—that the plaintiff relied on what was not said. *Blackie*, 524 F.2d at 908. This suggests to us that *Affiliated Ute* should be confined to omission cases.

Most circuits have limited the presumption accordingly. *See generally* Tim A. Thomas, Annotation, *When is it unnecessary to show direct reliance on misrepresentation or omission in civil securities fraud action under § 10(b) of Security Exchange Act of 1934 (15 U.S.C.A. § 78J(b)) and SEC Rule 10b–5 (17 C.F.R. § 240.10b–5)*, 93 A.L.R. FED. 444, 1989 WL 571811 (1989). A handful of circuits

have addressed mixed cases, concluding that the preferred approach is to do as the magistrate judge did here and "analytically characterize [the] action as either primarily a nondisclosure case (which would make the presumption applicable), or a positive misrepresentation case." *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir.1987); *see also Austin v. Loftsgaarden*, 675 F.2d 168, 178 n. 21 (8th Cir.1982) (agreeing with the Third Circuit that an analysis of plaintiff's allegations and an initial determination of burden of proof is more appropriate than a dual jury instruction in a mixed case).

We agree with these circuits that the *Affiliated Ute* presumption should not be applied to mixed cases of alleged misstatements and omissions. Thus, Judge Williams' decision not to apply the presumption was sound and supported by the weight of authority. Accordingly, we agree with the district court that Binder's plaintiff class is not entitled to the *Affiliated Ute* presumption of reliance.

**B.**

Binder also contends that the court erred by rejecting his contention that the class was entitled to a "fraud-on-the-market" presumption of reliance. The fraud-on-the-market presumption is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements...." *Basic Inc.*, 485 U.S. at 241–42, 108 S.Ct. 978 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3d Cir.1986)); *see also In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113–1114 (9th Cir.1989). Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an "efficient market," thereby establishing

a "fraud on the market." *See Basic Inc.,* 485 U.S. at 247, 108 S.Ct. 978; *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 197 (6th Cir.1990).

Judge Williams ruled that the class was ineligible for this presumption because the market for AVBC stock—which traded exclusively on the OTC market until December 1993—was not efficient. Acknowledging "an absence of Ninth Circuit case law defining an efficient market," Judge Williams employed the five factors from *Cammer v. Bloom,* 711 F.Supp. 1264, 1286–87 (D.N.J.1989), noting that the District Court for the Southern District of California had found the factors "helpful in determining whether the market is efficient," *See In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 804 (S.D.Cal.1990); *see also Hayes v. Gross,* 982 F.2d 104, 107 n. 1 (3d Cir.1992) (noting *Cammer*'s "thorough analysis"); *Freeman,* 915 F.2d at 199 (applying *Cammer* factors); *Hoexter v. Simmons,* 140 F.R.D. 416, 419 (D.Ariz. 1991) (same); *Harman v. LyphoMed, Inc.,* 122 F.R.D. 522, 525 (N.D.Ill.1988) (applying factors identical to *Cammer* ).

■ During the relevant time period, AVBC's stock traded exclusively in the OTC market. Stocks in that market are listed on "pink sheets" that circulate daily and contain "bid" and "ask" prices, but do not include trading information, such as the volume of sales or the prices investors are actually paying. The question is whether such a market is efficient—meaning simply whether the stock prices reflect public information. *See Cammer,* 711 F.Supp. at 1281, 1282; *see also Hoexter,* 140 F.R.D. at 419 (concluding that the *Cammer* factors, rather than "the mere fact that the ·... shares were traded on the OTC market," supported preliminary finding of efficiency); *Hurley v. FDIC,* 719 F.Supp. 27, 33 (D.Mass.1989) ("Where the stock is traded is not the crucial issue. The important question is whether the stock is traded in a market that is efficient—one that obtains material information about a company and accurately reflects that information in the price of the stock."); *Harman,* 122 F.R.D. at 525 (noting that "the inquiry in an individual case remains the development of the market for that stock, and not the location where the stock trades"); *but see Epstein v. American Reserve Corp.,* No. 79 C 4767, 1988 WL 40500, at *5 (N.D.Ill. Apr.21, 1988) ("[W]e believe that the over-the-counter market is incapable of meeting the Supreme Court test [in *Basic Inc. v. Levinson* ].").

The *Cammer* factors are designed to help make the central determination of efficiency in a particular market. They address five characteristics of the company and its stock: first, whether the stock trades at a high weekly volume; second, whether securities analysts follow and report on the stock; third, whether the stock has market makers and arbitrageurs; fourth, whether the company is eligible to file SEC registration form S–3, as opposed to form S–1 or S–2; and fifth, whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Cammer,* 711 F.Supp. at 1286–87. The district court determined that Binder offered evidence only as to the presence of market makers and arbitrageurs. We agree with the district court that this factor alone is insufficient as a matter of law to deem the market for AVBC stock efficient. Accordingly, we affirm the court's decision to decertify the class through December 1993.

### C.

After December 1993, AVBC stock began trading on the Boston Stock Exchange (BSE). The district court concluded that there was no showing that BSE was an inefficient market. The court nonetheless decertified the class for the remaining period from December 1993 to February 28, 1994 on the ground that Binder could not prove causation. The court concluded that during this time no false statements or

omissions were made that could have caused Binder's loss. Rather, the court reasoned that "some other factor or factors other than corporate information and disclosures" caused the value of AVBC stock to decline.

■ The causation requirement in Rule 10b–5 securities fraud cases includes "both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentations or omissions caused the harm." *McGonigle v. Combs*, 968 F.2d 810, 820 (9th Cir.1992) (quoting *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 773 (9th Cir.1984)). The requirement of transaction causation is equivalent to the element of reliance, or, in tort liability terms, but-for causation. *See id.* at 821; Michael J. Kaufman, *Loss Causation: Exposing a Fraud on Securities Law Jurisprudence*, 24 IND. L. REV. 357, 359–61 (1991) (tracing the history of the causation requirement). The loss causation requirement, equivalent to proximate causation in tort, is satisfied if the plaintiff shows that "the misrepresentation touches upon the reasons for the investment's decline in value." *McGonigle*, 968 F.2d at 821 (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. Unit A Mar.1981), *rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). That is, the plaintiff must show that the fraud caused, or at least had something to do with, the decline in the value of the investment after the securities transaction took place. *See* Kaufman, *supra* at 365 (criticizing the requirement as a potentially "insuperable barrier to recovery").

■ Treatment of the loss causation requirement in this circuit and others has been less than clear. This results in part from the amorphous "touches upon" requirement. *See id.* at 359–65. It also results from confusion between loss causation as a sub-element of the causation requirement, and loss causation as a calculation of damages. *See Robbins v. Koger*

*Properties, Inc.*, 116 F.3d 1441, 1447 n. 5 (11th Cir.1997) (noting the important distinction between loss causation and the proof of damages); *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 765 (7th Cir.1998) (apparently combining questions of loss causation and damages). Confusion aside, we conclude that Judge Williams was clearly correct in decertifying the class from December 1993 until February 1994. We agree that there was no showing of any material misrepresentations or omissions made during that period that can be said to have caused any investor loss.

## IV.

■ After decertifying the class, Judge Williams declined to exercise supplemental jurisdiction and, accordingly, dismissed the state class claims. Under 28 U.S.C. § 1367(c)(3), a district court may elect, in its discretion, not to exercise supplemental jurisdiction over state claims if it has dismissed the original jurisdiction federal claims. *See Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir.1998); *Voigt v. Savell*, 70 F.3d 1552, 1565 (9th Cir.1995). We conclude that dismissal of the state law class claims was not an abuse of discretion.

## V.

After dismissing the federal and state class claims against all defendants, only Binder's individual federal and state claims remained. The magistrate judge granted summary judgment in favor of Wilson, Stevens, and Fitchey, as well as Deloitte on the federal causes of action. The court again declined to exercise jurisdiction over the pendent state law claims.

■ We agree with the district court that summary judgment was appropriate for Wilson, Stevens, and Fitchey. None of these defendants had any role in AVBC prior to Binder's purchase of stock on September 24, 1991. Specifically, Wilson joined the board of directors in September or October 1992; Fitchey served

as a consultant beginning in June 1992; and Stevens joined the board in July 1993. A cause of action under section 10(b) applies only to misrepresentations or omissions made "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Only a purchaser or seller of securities has standing to bring an action under section 10(b) and Rule 10b–5. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Thus, Binder's statements that he would have sold his stock earlier but for AVBC's misrepresentations are irrelevant. *See Williams v. Sinclair,* 529 F.2d 1383, 1389 (9th Cir.1975) (Shareholders "who did no more than retain their shares[ ] are ... barred by the purchaser-seller rule from maintaining an action under Rule 10b–5."). As a matter of law, "conduct actionable under Rule 10b–5 must occur before investors purchase the securities." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1487 (9th Cir.1991); *see also Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646, 651 (9th Cir.1988). Accordingly, only statements or omissions disseminated before September 24, 1991 can form the basis for Binder's individuals claims.

■■■ Binder contends that summary judgment was inappropriate for Deloitte because Deloitte prepared financial statements filed with the SEC before he purchased his stock. The complaint alleges misrepresentations made prior to Binder's purchase, but only two implicate Deloitte. Those involve quarterly financial reports issued by AVBC, marked "unaudited," which Binder nevertheless maintains were prepared with Deloitte's assistance.

Binder offers, as evidence of Deloitte's participation, a reference in the first quarter statement to AVBC's "certified public accountants, Deloitte & Touche." He also relies upon deposition testimony by a Deloitte employee who stated, "We did comment on their 10–Q's." He neglects to include, however, the rest of the employee's testimony: "I would like to make one point

clear, ... that we never reviewed or had a business relationship with Aqua Vie that we were engaged to review their 10–Q's." In addition, the top of each section of the 10–Q forms was clearly marked "(unaudited)," and the completed forms were signed by Thomas Gillespie, with no mention (except the one reference) of Deloitte.

We conclude that Binder's meager evidence of Deloitte's participation in the reports is insufficient to preclude summary judgment. A party opposing summary judgment must offer more than a mere scintilla of evidence; indeed, "[s]ummary judgment may be granted if the evidence is merely colorable ... or is not significantly probative." *Summers v. A. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir.1997) (internal quotation omitted). Based on the record before us, we agree with the district court that there are no factual issues that could "reasonably be resolved in favor of either party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). We affirm the grant of summary judgment in favor of Deloitte.

## VI.

■■■ Finally, Binder takes issue with various evidentiary rulings during the course of the proceedings in district court. Specifically, he contends that the court erred by denying his request to depose one of Deloitte's experts; by considering Deloitte's experts' reports over Binder's objections; and by refusing to consider portions of Binder's "Tollefson Declarations." We reject Binder's contentions. He has not demonstrated how additional discovery would have precluded summary judgment. *See Natural Resources Defense Council v. Houston,* 146 F.3d 1118, 1132–33 (9th Cir.1998). Similarly, the judge stated that, in deciding to grant summary judgment, he "primarily relied on existing case law" rather than the expert reports. Therefore, even if some reports had been erroneously considered, the error was harmless. *See id.* at 1133. Fi-

nally, the "Tollefson declarations" were properly struck because the court correctly concluded that Binder's expert lacked personal knowledge and was not shown to be competent to offer expert testimony.

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting in part:

Because the plaintiffs are entitled to a presumption of reliance under the doctrine of *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), I would reverse the district court's decision to decertify the class of investors represented by Binder. I therefore respectfully dissent.[1]

In today's decision, the majority decides that the *Affiliated Ute* presumption does not apply to cases involving both material misrepresentations and material omissions. In so holding, the majority resolves a question that we have previously, and explicitly, reserved: "whether *Affiliated Ute Citizens* applies equally to misrepresentations." *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 769 n. 2 (9th Cir.1982). I believe that the logic behind the *Affiliated Ute* decision and the reasoning contained in our decisions implementing *Affiliated Ute* make it clear that it does.

As an initial matter, the majority is simply incorrect that the *Affiliated Ute* presumption does not, as a rule, apply to "mixed cases of alleged misstatements and omissions." (Opinion at 2879). To understand why, we need look no further than *Affiliated Ute* itself which was, after all, a "mixed case[ ] of alleged misstatements and omissions." In *Affiliated Ute,* the defendants made at least one significant misstatement; namely, "that the prevailing

market price of the UDC shares was the figure at which their purchases were made." 406 U.S. at 152, 92 S.Ct. 1456. To be sure, there were also significant material omissions made by the defendants, most notably their failure to disclose the existence of a secondary market in which the securities could be traded at a higher price. *See id.* at 152–53, 92 S.Ct. 1456. But the existence of the omissions, of course, does not change the fact that the case involved *both* omissions *and* misrepresentations. The Court's holding makes it plain that the rule must apply to some mixed cases. As the Court wrote:

> Under the circumstances of this case, involving *primarily* a failure to disclose, positive proof of reliance is not a prerequisite to recovery.

*Id.* at 153, 92 S.Ct. 1456. The *Affiliated Ute* rule, established in a mixed case, quite clearly applies to some mixed cases.

Drawing on the passage from *Affiliated Ute* cited immediately above, the district court determined that the *Affiliated Ute* rule did not apply in *this* mixed case because, it determined, this case is not "primarily" an omissions case.[2] In classifying the case as "primarily" a misrepresentations case the district court was, as the majority points out, following a procedure adopted by two other circuits. *See Finkel v. Docutel/Olivetti Corp.,* 817 F.2d 356, 359 (5th Cir.1987); *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749, 756 (11th Cir.1984). Those circuits have determined that, in mixed cases, it is necessary to "analytically characterize [the] action as either primarily a nondisclosure case ... or a positive misrepresentation case." *Finkel,* 817 F.2d at 359. Because I believe the *Affiliated Ute* presumption applies equally to misrep-

---

1. I agree, however, with Part V of the opinion that summary judgment was appropriate for Binder's individual claims against Wilson, Stevens, Fitchey and Deloitte, and with the majority's conclusion in Part VI with respect to the evidentiary issues.

2. The majority's decision may rest on similar reasoning, although it is not entirely clear. For example, at the outset of Section III, the majority writes that it "agree[s] with the district court's characterization of Binder's action." (Opinion at 652).

resentations, however, I find it irrelevant whether the case is primarily a misrepresentations case or primarily an omissions case. In either event the plaintiff is entitled to a presumption of reliance.[3]

In *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir.1975), on which the majority relies, we examined a material omissions case in which the plaintiff bought stock based in part on material omissions made by the defendant. We examined the *Affiliated Ute* rule and concluded that the *Blackie* plaintiffs did not need to prove reliance. We explained that such proof would require "proof of a speculative negative." *Id.* In other words, to establish reliance, the plaintiff would have to prove the following proposition: "I would not have bought had I known." *Id.* We rejected such a requirement because:

> Direct proof would inevitably be somewhat pro-forma, and impose a difficult evidentiary burden, because addressed to a speculative possibility in an area where motivations are complex and difficult to determine.... Here, the requirement [of proving reliance] is redundant—the same causal nexus can be adequately established indirectly, by proof of materiality coupled with the common sense that a stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock.

*Id.* Because *Blackie* was a pure omissions case, we did not have occasion to determine whether the same reasoning would apply to material misrepresentations.

One year later, however, in *Little v. First California Co.*, 532 F.2d 1302, 1305 n. 4 (9th Cir.1976), we stated the rather obvious proposition that "[t]he categories of 'omission' and 'misrepresentation' are not mutually exclusive." As we wrote:

> All misrepresentations are also nondisclosures, at least to the extent that there is a failure to disclose which facts in the representation are not true. Thus, the failure to report an expense item on an income statement, when such a failure is material in the *Affiliated Ute* sense, can be characterized as (a) an omission of a material expense item, (b) a misrepresentation of income, or (c) both.

*Id.* This observation, besides being binding upon us as a matter of law, is clearly correct as a matter of logic. Omissions and misrepresentations both deprive the investor of truthful information relevant to the investment decision, and both result in the artificial pricing of a stock.

Most important for our purposes here, it is *equally* difficult to establish reliance on a misrepresentation and on an omission. While a plaintiff in an omissions case—absent the *Affiliated Ute* presumption—would bear the daunting task of proving 'I would not have bought/sold had I known what you failed to tell me' *see Blackie*, 524 F.2d at 908, the plaintiff in a misrepresentation case bears the equally daunting burden of proving 'I would not have bought/sold had I known what you failed to tell me; namely, the truth.' In either case, the plaintiff must prove that he would have acted differently if he had known some-

---

**3.** To be sure, plaintiffs in any 10b action must have actually relied on the material omission or misrepresentation in order to recover damages. *See* 15 U.S.C. § 78j(b). I do not dispute this. As discussed below, I believe only that plaintiffs in mixed cases are entitled to a *presumption* of reliance whether the case is primarily an omissions case or primarily a misstatements case. None of our other 10b cases is to the contrary. It is true that in *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1159 (9th Cir.1996), and

*Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963–64 (9th Cir.1990), we recited the general rule that investors must demonstrate reliance on an alleged misrepresentation. Neither *Paracor* nor *Smolen* was a mixed case, however, and in neither case were we called on to determine whether the investors might be entitled to a presumption of reliance under the *Affiliated Ute* doctrine. Our holding in both cases was merely that the investors did not, in fact, rely on the misstatements.

thing that he did not actually know, i.e., the full truth.

In an omissions case, the plaintiff does not know the truth because the defendant said nothing; in a misrepresentations case the plaintiff does not know the truth because the defendant lied. But, as far as the plaintiff's ability to demonstrate reliance, this is a distinction without a difference. In either case, the plaintiff must attempt to prove that he would have acted differently had he known the truth. The evidentiary burden is therefore equally difficult in either case, and there is no logical reason to afford the presumption of reliance to plaintiffs in omissions cases but not in misrepresentations cases. The rule we announced in *Blackie*, that the "causal nexus can be adequately established indirectly, by proof of materiality coupled with the common sense that a stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock," *id.*, applies with equal force of logic to misrepresentations.

The Third Circuit made a similar observation in *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 188 (3d Cir.1981). *Sharp* involved both material omissions and misrepresentations. The *Sharp* court noted that the reason for "shifting the burden on the reliance issue has been an assumption that the plaintiff is generally incapable of proving that he relied on a material omission." *Id.* The court concluded, however, that "this observation does not justify a clear distinction between the treatment of misrepresentations and omissions." *Id.* As the Third Circuit put it:

> [T]he problem of speculation is not unique to situations in which omissions have occurred. In misrepresentation actions as well, proof of reliance requires a degree of speculation on the action that the plaintiff would have taken had no misrepresentation occurred.

*Id.*

*Affiliated Ute* recognized the inherent difficulty of proving reliance in securities fraud cases, and accordingly announced a rule of presumed reliance in a mixed omissions and misrepresentations case. As suggested by our opinion in *Little* and by the Third Circuit in *Sharp*, plaintiffs face the same difficulty in proving reliance on misrepresentations. I would therefore hold that plaintiffs in mixed cases are entitled to the *Affiliated Ute* presumption of reliance whether the case is primarily an omissions case or primarily a misrepresentations case. Accordingly, whether this case is properly classified simply as a mixed omissions and misrepresentations case, or as "primarily" a misrepresentations case, I would hold that the Binder class was entitled to a presumption of reliance, and would therefore reverse the decertification of the class.[4]

---

4. A different question, one not presented here, is whether plaintiffs are entitled to a presumption of reliance in pure misrepresentation cases. Dicta in *Paracor*, 96 F.3d at 1159, and *Smolen*, 921 F.2d at 963–64, might be read to suggest that plaintiffs in pure misrepresentation cases are required to demonstrate reliance affirmatively. Especially given the fact that we did not consider, in either case, whether a presumption of reliance would have been appropriate, and that our holding in neither case resolved the question, *see supra* n. 3, I would not read the dicta in such a way. In light of the logic of *Affiliated Ute*, and for the reasons I have outlined above, I would hold (were I called on to reach the question) that plaintiffs are entitled to a presumption of reliance even in pure misrepresentation cases.