Michael BROUDO; Baldev S. Gill; Larry Morgan Ira; Leonid Shvartsman, (for G & S partnership); Neil Siskind; Roberta Speck; Brent Vogt, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

DURA PHARMACEUTICALS, INC.; Cam L. Garner; James W. Newman; Charles W. Prettyman; Walter F. Spath; James C. Blair; Julia R. Brown; Joseph C. Cook, Jr.; Mitchell R. Woodbury; Merill Lynch and Co./Merrill Lynch, Pierce Fenner and Smith, Inc.; Nissan Motor Co., a Japanese corporation, Defendants–Appellees.

No. 01–57136.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2003.

Filed Aug. 5, 2003.

934

William S. Lerach, Jan M. Adler, Eric
A. Isaacson, Henry Rosen, Tor Gronborg,
Joseph D. Daley, Milberg Weiss Bershad
Hynes & Lerach LLP, Alan Schulman,
Blair A. Nicholas, Bernstein Litowitz Ber-
ger & Grossmann, LLP, San Diego, CA;
Steven J. Toll, Cohen, Milstein, Hausfeld
& Toll, P.L.L.C., Seattle, WA, for the
plaintiffs-appellants.

William F. Sullivan, Christopher H.
McGrath, Sean T. Prosser, Colleen E.

Huschke, Brobeck, Phleger & Harrison, LLP, San Diego, CA, for the defendants-appellees.

Before PREGERSON, REINHARDT, and ARCHER,* Circuit Judges.

ARCHER, Senior Circuit Judge.

Michael Broudo et al. ("Appellants") appeal the district court's dismissal with prejudice of the second amended complaint ("SAC") under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). *In re Dura Pharm., Inc. Sec. Litig.*, No. 99CV0151–L(NLS) (S.D.Cal. Nov. 11, 2001). Because 1) the SAC satisfied the loss causation element of a Section 10(b) violation of the Securities and Exchange Act of 1934 with respect to the Albuterol Spiros device; and 2) the district court abused its discretion in not permitting Appellants to amend the SAC to include additional allegations regarding Dura's Ceclor CD sales, the district court's judgment is reversed and remanded.

## BACKGROUND

This securities fraud case is a class action on behalf of investors who purchased Dura Pharmaceutical securities between April 15, 1997, and February 24, 1998 ("the class period"). This appeal is drawn specifically to alleged misleading and untrue statements made by Dura and its officials (collectively "Dura")[1] about Dura's Albuterol Spiros delivery device for asthma medication[2] and Dura's Ceclor CD antibiotic. During the class period, Dura issued several press releases[3] indicating satisfactory development and testing of the Albuterol Spiros Device and claiming rising sales of Ceclor CD, both of which Appellants allege were known to Dura and the individual defendants to be untrue. The most relevant statements are the following:

April 15, 1997 Press Release commenting on better-than-expected first quarter results: "Dura ... announced that revenues and net income for the first quarter more than doubled over the same period last year." This press release also quoted a Dura official as stating that he was "very pleased with the first quarter results" and that "we are happy with the strong progress made in selling our new respiratory antibiotic Ceclor CD." The release further stated that "Patient dosing was completed for clinical trials needed for NDA (new drug application) submission of Spiros albuterol...." (SAC ¶ 56)

June 5, 1997 Press Release: "Dura ... announced the completion of the clinical trials necessary for a new drug application (NDA) submission for the Albuterol Spiros product...." "We are pleased with the results to date and are prepar-

---

* The Honorable Glenn L. Archer, Jr., Senior Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Dura is a San Diego-based developer and marketer of prescription pharmaceutical products for the treatment of allergies, asthma, and related respiratory condition.

2. The Albuterol Spiros system is a device used to dispense asthma medication which does not make it imperative that the patient inhale at the exact time the medicine is dispensed.

3. Other statements offered by Appellants are those made by analysts purporting to report what various Dura officials had told them. However, the complaint does not clearly attribute any of these comments to Dura officials, and they are not discussed further.

ing the NDA for filing in the latter half of this year." (SAC ¶ 79)

July 15, 1997 Press Release commenting on better–than-expected Q2 results: "We are pleased with Dura's performance in the second quarter of 1997. Ceclor CD ... ha[s] been well received by physicians who are responding favorable to our promotional efforts.... We completed clinical trials necessary for NDA (new drug application) submission and are on track to file the Albuterol Spiros NDA on behalf of Spiros Corp. in the second half of 1997." (SAC ¶ 85)

October 14, 1997 Press Release, commenting on better-than-expected Q3 results: "Dura ... today reported record earnings for both the third quarter and nine months year-to-date of 1997, compared to the same periods last year.... Pharmaceutical sales growth is principally attributable to the impact of new product acquisitions and introductions, such as Ceclor CD...." (SAC ¶ 111)

November 10, 1997 Press Release, announcing submission of NDA: "Dura ... today announced that it has submitted a new drug application (NDA) with the FDA for Albuterol Spiros." (SAC ¶ 123)

January 20, 1998 Press Release, commenting on better-than-expected Q4 results: "Dura reported record revenues ... for the quarter and the full year .... 'During the past year we significantly strengthened both the pharmaceutical product marketing and the Spiros development arms of our business ... We have continued to demonstrate our capabilities as a respiratory marketing force as shown by the growth of our Ceclor CD market share ... from 8% at the beginning of 1997 to 25 % by year-end.'" (SAC ¶ 128)

In the class period, Dura's stock reached a high of $53 per share. On the last day of the class period, February 24, 1998, Dura revealed that it expected lowerthan-forecast 1998 revenues and 1998 earnings per share ("EPS") due to, *inter alia,* slower-than-expected sales of Ceclor CD. Dura's stock then dropped from $39⅛ on February 24, 1998, to $20¾ on February 25, 1998, a 47% one-day loss. Throughout the remainder of 1998, Dura's business declined. In an April 16, 1998 conference call with stock analysts, Dura revealed that as early as December 1997, wholesale channels had been clogged with many months of excess inventory and that actual sales of several products, including Ceclor CD, had in fact been declining. Later, in November 1998, Dura also revealed that the FDA found the Albuterol Spiros device not approvable due to electro-mechanical reliability issues and chemistry, manufacturing, and control concerns.

Appellants filed several class actions alleging violations of sections 10(b) and 20(a) of the Securities and Exchange Act and Rule 10b–5 promulgated by the Securities Commission, which, in due course, were consolidated. The district court granted Dura's motion to dismiss the Consolidated and Amended Complaint but dismissed it without prejudice. In doing so, the court instructed the Appellants as follows:

> The amended complaint shall comply with Federal Rule of Civil Procedure 8, and concisely set forth each allegedly false or misleading statement or omission, and follow each statement or omission with the specific reasons why the statements were false when made or why the Defendants had a duty to disclose. In addition, the Plaintiffs shall specify which Defendants made the statements and knew the "true facts" that should have been disclosed.

*In re Dura Pharmaceuticals, Inc. Securities Litigation,* No. 99CV0151–L(NLS) 2000 WL 33176043, *12 (S.D.Cal. Jul. 11,

2000). Appellants subsequently filed the SAC which the district court also dismissed, this time, however, with prejudice.

With respect to the Albuterol Spiros device, the district court found that Appellants had not properly pled the loss causation element of a 10(b) violation. Specifically, the district court focused on the last day of the class period—February 28, 1998—and Dura's revelation that day which led to the large drop in stock price:

> The SAC does not contain any allegations that the FDA's non-approval [of the Albuterol Spiros device] had any relationship to the February price drop. Accordingly, the SAC does not explain how the alleged misrepresentations and omissions regarding Albuterol Spiros "touched" upon the reasons for the decline in Dura's stock price. Rather, the decline in Dura's stock price was the result of an expected revenue shortfall. Accordingly, the SAC's allegations regarding Albuterol Spiros are insufficient to state a claim.

*In re Dura Pharm.*, slip op. at 15. The district court reasoned further that because the February 24 announcement did not mention the Albuterol Spiros device, any omissions or misleading statements about this device could not be said to have caused the decline in price. Therefore, the district court ruled that the loss causation element was not met.

Turning to Dura's statements regarding Ceclor CD sales made during the class period, the district court found that Appellants' allegations in the SAC were not sufficient to indicate that these statements were false and made with knowledge of their falsity. *Id.* at 20. The district court therefore held that the allegations in the SAC were not sufficient to withstand a motion to dismiss based on the scienter requirement for a § 10(b) violation. *Id.*

The district court then dismissed the complaint with prejudice "[b]ecause the Plaintiffs have had an opportunity to amend the complaint to meet the pleading requirements under the PSLRA and *Silicon Graphics.*" *Id.* at 23. This appeal followed, and we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

■■■■ A complaint's dismissal under FRCP 12(b)(6) is reviewed *de novo. See Howard v. Everex Sys.*, 228 F.3d 1057, 1060 (9th Cir.2000). And on review, the court must accept the complaint's well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *See In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 983 (9th Cir.1999). A district court's denial of leave to amend is reviewed for abuse of discretion. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir.2002).

■■■ In order for plaintiffs to properly allege a claim brought under § 10(b) of the Securities Exchange Act of 1934, they must state the following: (1) defendants made a false statement or omission with regard to a material fact; (2) in connection with the purchase or the sale of a security; (3) with scienter; (4) upon which plaintiffs reasonably relied; and (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).

*Loss Causation*

■■■ "The causation requirement in Rule 10b–5 securities fraud cases includes 'both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentations or omissions caused the harm.'" *Id.* at 1065 (*quoting McGonigle v. Combs*, 968 F.2d 810, 820 (9th Cir.1992)). In this circuit,

loss causation is satisfied where "the plaintiff shows that 'the misrepresentation touches upon the reasons for the investment's decline in value.'" *Id.* at 1066 (*quoting McGonigle,* 968 F.2d at 821); *accord Provenz v. Miller,* 102 F.3d 1478, 1492 (9th Cir.1996); *Binder,* 184 F.3d at 1066 (9th Cir.1999).

■ This "touches upon" language is admittedly ambiguous. *See Binder,* 184 F.3d at 1066 (stating that the "loss causation requirement in this circuit and others has been less than clear"); *Knapp v. Ernst & Whinney,* 90 F.3d 1431, 1438 (9th Cir. 1996) (stating "[a]lthough there may be other acceptable formulations of this [loss causation] element, the [trial] court's instruction was proper"). Our cases have held, however, that: "[i]n a fraud-on-the-market case, plaintiffs establish loss causation if they have shown that the price *on the date of purchase* was inflated because of the misrepresentation." *Knapp,* 90 F.3d at 1438 (emphasis added) (*citing Gray v. First Winthrop Corp.,* 82 F.3d 877, 886 (9th Cir.1996)); *see also Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824, 832 (8th Cir.2003) ("[P]laintiffs were harmed when they paid more for the stock than it was worth. This is a sufficient allegation."); *Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 97–98 (2d Cir.2001) ("[P]laintiffs may allege transaction and loss causation by averring both that they would not have entered the transaction but for the misrepresentations and that the defendants' misrepresentations induced a disparity between the

transaction price and the true 'investment quality' of the securities *at the time of transaction.*") (emphasis added). Accordingly, for a cause of action to accrue, it is not necessary that a disclosure and subsequent drop in the market price of the stock have actually occurred, because the injury occurs at the time of the transaction. *See Gray,* 82 F.3d at 886; *Knapp,* 90 F.3d at 1438. It is at that time that damages are to be measured. Thus, loss causation does not require pleading a stock price drop following a corrective disclosure or otherwise. It merely requires pleading that the price at the time of purchase was overstated and sufficient identification of the cause.[4]

■ Here the district court found that Appellants' allegations in the SAC regarding the Albuterol Spiros device were insufficient to state a claim of securities fraud because they did not explain how the loss causation element was satisfied. Specifically, the court found "[t]he SAC does not contain any allegations that the FDA's non-approval [of the Albuterol Spiros device] had any relationship to the February price drop. Accordingly, the SAC does not explain how the alleged misrepresentations and omissions regarding Albuterol Spiros 'touched' upon the reasons for the decline in Dura's stock price." *Dura Pharm.,* slip op. at 15. This reasoning presumes that the loss causation element requires a demonstration of a corrective disclosure followed by a stock price drop during the class period and that those

---

4. By contrast, other circuits are less favorable to plaintiffs and do require demonstration of a corrective disclosure followed by a stock price drop to be alleged in the complaint. *See, e.g., Semerenko v. Cendant Corp.,* 223 F.3d 165 (3d Cir.2000) ("Where the value of the security does not actually decline as a result of an alleged misrepresentation, it cannot be said that there is in fact an economic loss attributable to that misrepresentation. In the absence of a correction in the market price, the cost of the alleged misrepresentation is still incorporated into the value of the security and may be recovered at any time simply by reselling the security at the inflated price."); *Robbins v. Kroger Properties, Inc.,* 116 F.3d 1441, 1448 (11th Cir.1997) ("Our decisions explicitly require proof of a causal connection between the misrepresentation and the investment's subsequent decline in value.")

facts must be alleged in the complaint. As we explain, it is necessary in the pleading to allege 1) that the stock's price at the time of purchase was overstated and 2) sufficient identification of the cause for this overvaluation. Appellants have pled that the price of the stock was overvalued in part due to the misrepresentations by Dura and the individual defendants that the development and testing of the Albuterol Spiros device were proceeding satisfactorily and that FDA approval of the device was imminent. Accordingly, the district court erred by finding that appellants failed to plead loss causation sufficient to survive a motion to dismiss with regard to statements concerning the Albuterol Spiros device.

*Scienter*

The pleading requirements for securities fraud actions are articulated in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). First, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. §§ 78u–4(b)(1) (2000). The second requirement of the PSLRA is that the plaintiff plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u–4(b)(2) (2000).

■ This court recently summarized the scienter requirement: "The complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness or, if the challenged representation is a forward looking statement, with 'actual knowledge ... that the statement was false or misleading.'" *In re Vantive Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.2002). Accordingly, "[w]here pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or deliberate recklessness [sic] made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6)." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir.2001). We must decide whether the Appellants met this scienter requirement with regard to their allegations concerning Dura's Ceclor CD sales.

■ At issue are statements made by Dura reporting increased market share of Ceclor CD and expressing optimism with respect to Ceclor CD's future results. Specifically, the SAC alleges that Dura made misrepresentations that sales of Ceclor CD had been positive throughout the year when it issued statements indicating that Dura was "pleased" with the sales results of various quarters and that the company was "happy" with the strong progress made in selling Ceclor CD throughout the year. (SAC ¶¶ 56, 85, 111, 128). Appellants allege that these statements were false or misleading because sales of Dura's major drug products were flat or declining, particularly Ceclor CD, with actual sales to consumers dropping throughout the class period. (SAC ¶ 58(a)). Appellants further allege that the defendants knew of these declining sales through specialized reports which compared actual versus planned sales of Dura's drug products. (SAC ¶ 62) Thus, the defendants were kept apprised of Dura's drug sales and knew that such sales were below plan and insufficient for Dura to achieve continued growth in sales and earnings. (SAC ¶ 62).

To support the allegations that Dura was aware of the falsity of the favorable statements, Appellants further allege Dura and the individual defendants engaged in

insider trading, raised capital through a stock offering, and engaged in "channel stuffing" (the premature pushing of product into the wholesale channels to artificially inflate sales):

> [i]n order to cover up the sales shortfalls ... Dura was engaging in a subterfuge to artificially inflate its revenues and EPS by shipping excessive amounts of Ceclor CD and other products to wholesalers, who were enticed to take the product by price discounts, extended payment terms and/or other incentives. As a result, Dura's Ceclor CD and other product inventories in the distribution channel were greatly in excess of the normal one-month supply. As a result of this practice, Dura's Ceclor CD sales were artificially inflated and Dura's insiders knew that as a result of "borrowing" millions of dollars of sales of Ceclor CD from future periods, Dura's sales of Ceclor CD would fall sharply once this practice stopped.

(SAC ¶ 58(d)).

The district court discussed each of these allegations separately and concluded that each was insufficient to show scienter. As explained above, the pleading requirement for the element of scienter in a securities fraud case is high. The existence of reports that showed Ceclor CD sales were below internal projection and Dura's knowledge of these reports, coupled with Dura's statements that it was pleased with sales figures, are not specific facts that strongly suggest actual intent by Dura to mislead investors. In fact, Dura's internal expectations could have been aggressive and falling short of them may have been anticipated. Further, while unusual stock or suspicious stock sales can serve as cir-

cumstantial inference of scienter, *see In re Silicon Graphics,* 183 F.3d at 986, the allegations of insider trading in the SAC do not indicate that the individual defendants' trading practices were dramatically out of line with their prior trading activities. Turning to the "channel stuffing" allegations, as the district court explained, channel stuffing claims may have some probative value insofar as the channel stuffing was done so as to artificially inflate income, but there may also be other legitimate reasons for attempting to achieve sales earlier. We see no fault with the district court's conclusion that here the allegation of channel stuffing was insufficient for scienter.

While the district court did a detailed analysis of the Appellants' separate arguments for scienter, its task was not complete. This court has made clear that allegations of scienter must be collectively considered: "Beyond each individual allegation we also consider 'whether *the total of plaintiffs' allegations,* even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness.'" *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 938 (9th Cir.2003) (quoting *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1038 (9th Cir.2002)) (emphasis added). Accordingly, we must vacate the district court's finding of no scienter. On remand the district court should perform the final step of considering the Appellants' allegations collectively when conducting its scienter analysis.[5]

*Leave to Amend*

Finally, Appellants assert they should have been granted the opportunity to

---

**5.** We express no opinion as to whether the allegations in the SAC *in totum* rise to the level necessary for scienter. Indeed, this would be premature because of our decision

that Appellants should be permitted to amend the complaint (see below), which may result in additional scienter allegations.

amend the SAC. Leave to amend under FRCP 15 is to be liberally applied. Where the plaintiff offers to provide "additional evidence" that would add "necessary details" to an amended complaint and such offer is made in good faith, leave to amend should be granted. *See Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir.2003) (holding that the district court erred in not granting leave to amend the complaint in a securities fraud case in order for plaintiffs to meet the scienter requirement of the PSLRA). Specifically, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Id.* at 1052.

■ With respect to Ceclor CD sales, Appellants seek to amend the SAC to include, *inter alia*, statements by a confidential witness who has direct knowledge that at least two of the defendants discussed how they could make stock analysts "perceive" that Dura was doing better than it actually was and that one of the defendant's oft-stated catch phrase to employees who questioned his tactics was "let 'em catch us." Such allegations are the type that could demonstrate a strong inference that Dura knowingly or with deliberate recklessness made false or misleading statements to investors. Accordingly, we cannot say that the SAC could not be saved by amendment.

Because it appears that Appellants had a reasonable chance of successfully stating a claim if given another opportunity, the district court abused its discretion in denying leave to amend the SAC.[6]

**6.** Additionally, Appellants seek to amend the SAC by alleging the contents of specific conversations between confidential witnesses and Dura insiders which would further corrobo-

## CONCLUSION

Dura invites us to affirm the district court's judgment based on issues not decided by the district court. Specifically, Dura asserts that the alleged misleading statements are not actionable because they are protected by the safe harbor and bespeaks caution doctrines, that non-speaking defendants cannot be liable under section 10(b), and that Appellants failed to plead "all facts" to support their "information and belief" allegations. While Dura is correct that we *may* affirm the district court's judgment on a different ground, we need not do so. Indeed, we usually do not. *See Andersen v. Cumming*, 827 F.2d 1303, 1305 (9th Cir.1987) (stating "[o]rdinarily we will not decide an issue that was not addressed by the district court") (citing *Greater Los Angeles Council of Deafness v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987)). We decline Dura's invitation for this reason. Further, because we are granting Appellants leave to amend the SAC, Dura's "other" arguments may be mooted by such amendment. Accordingly, it would be improper for us to rule on those issues.

We hold Appellants have sufficiently pled loss causation to survive a motion to dismiss with regard to statements concerning the Albuterol Spiros device. Additionally, Appellants have shown that they should have been granted leave to amend the SAC. Therefore, the judgment of the district court is

## REVERSED AND REMANDED.

rate the allegations concerning the Albuterol Spiros device. We see no reason to limit amendments to the SAC to allegations concerning Ceclor CD sales.