

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COLLEGENET, INC., a Delaware corporation,<br><br>                    Plaintiff-Appellant,<br><br>    v.<br><br>THE COMMON APPLICATION, INC., a Virginia corporation,<br><br>                    Defendant-Appellee. | No.    15-35443<br><br>D.C. No. 3:14-cv-00771-HZ<br><br>MEMORANDUM<sup>*</sup> |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted October 5, 2017
Seattle, Washington

Before:  LIPEZ,** WARDLAW, and OWENS, Circuit Judges.

CollegeNET, Inc. appeals from the district court's grant of The Common

Application, Inc.'s ("TCA") motion to dismiss.  The district court concluded that

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Kermit V. Lipez, United States Circuit Judge for the First Circuit, sitting by designation.

CollegeNET could not assert an antitrust injury because CollegeNET's Complaint lacked sufficient factual allegations of harm to consumers. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

1. The district court prematurely concluded that CollegeNET could not assert an antitrust injury from restraints that resulted in reduced choice, and lower quality and less innovative college application services. Antitrust injury consists of four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). A plaintiff may assert antitrust injury from "[c]oercive activity that prevents [consumers] from making free choices between market alternatives," as well as restraints that artificially erect barriers to market entry and protect lower quality products. *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374–75 (9th Cir. 2003) (quoting *Amarel v. Connell*, 102 F.3d 1494, 1509 (9th Cir. 1996)); *see also Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("[A]n act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality.").

CollegeNET's inability to allege that TCA's prices fell below cost is not fatal to its claims because below-cost pricing is only one indicator of injury. *See Glen Holly Entm't*, 352 F.3d at 375 ("[W]hile an increase in price resulting from a dampening of competitive market forces is assuredly one type of injury . . . , that is not the only form of injury . . . ." (emphasis removed) (internal citation omitted) (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 482–83 (1982))); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 9–14 (1984) (noting that anticompetitive consequences occur when tying arrangements force consumers to buy unwanted products), *abrogated on other grounds*, *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) (stating that "the complaint's allegations of reduced choice . . . and increased prices would sufficiently plead . . . that they had been harmed by the challenged injury to competition"). Although below-cost pricing is a signature attribute of a predatory pricing scheme, the absence of below-cost pricing is not necessarily indicative of a competitive market when other forms of anticompetitive conduct are also alleged. *See Glen Holly Entm't*, 352 F.3d at 375.

At this preliminary stage in the proceedings, it is sufficient that CollegeNET has alleged that TCA limited college choice, decreased the scope of services and price competition available to student applicants, and foreclosed rivals from entry

to the market, thereby reducing overall market satisfaction "by leaving one dominant provider offering inferior products and services." Additional factual development may prove that consumers attribute no value to the supplemental features in CollegeNET's application system, but the district court erred in making this determination in deciding the motion to dismiss.

**2.** We decline TCA's invitation to affirm on grounds not reached by the district court. Although "'we *may* affirm the district court's judgment on a different ground, we need not do so' and 'we usually do not.'" *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1022 (9th Cir. 2006) (quoting *Brondo v. Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003), *abrogated on other grounds*, *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1127–29 (9th Cir. 2015) (en banc)). The question of whether, and if so in what market, TCA has monopoly power is complex, nuanced, and fact dependent. *See Twin City Sportservice, Inc. v. Charles O'Finley & Co., Inc.*, 676 F.2d 1291, 1299 (9th Cir. 1982) ("The definition of the relevant market is basically a fact question . . . ."); *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir. 1988) ("Our . . . decisions establish that both market definition and market power are essentially questions of fact."). Because of its holding on the antitrust injury

question, the district court has not had an opportunity to rule on these additional issues. We decline to do so in the first instance.

**REVERSED AND REMANDED.**