Kenneth FORD, Plaintiff,

v.

**NYLCARE HEALTH PLANS OF THE GULF COAST, INC., et al., Defendants.**

Civ.No. 96–1564.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 1, 1999.

**424**

Kenneth R. Wynne and Mark Maney, Wynne & Maney, Houston, TX, for plaintiff.

Neal S. Manne and James Hoke Peacock, III, Susman Godfrey, Houston, TX, John Bruce Shely, Andrews & Kurth, Houston, TX, Wayne B. Mason Dallas, TX, Paula Denney, Strasburger & Price, Houston, TX, for defendants.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Motion for Class Certification filed by plaintiff Kenneth Ford ("Ford"). Having considered the motion, submissions, and applicable law, together with the arguments of counsel at a class certification hearing conducted by the Court, the Court determines that the motion for class certification should be denied.

Ford filed this suit on behalf of a proposed class of Board-certified physicians who have contracted with the various defendant HMO companies, alleging claims of false advertising under the Lanham Act, § 43(a), 15 U.S.C. § 1125(a). Specifically, Ford alleges that the defendants violated the Lanham Act by misdescribing core features of their HMOs in advertising and promotional materials used to persuade prospective patients and their employees to subscribe to their plans. The named defendants are Aetna U.S. Healthcare, Inc. ("Aetna"), United HealthCare ("UHC"), and New York Life's HMOs, which operate under the name NYL-Care and which have subsequently been acquired by Aetna.

The thrust of Ford's complaint is that defendant HMOs built substantial memberships on the basis of false and misleading advertising. Specifically, the defendants' advertisements regarding the quality of health care provided by doctors in their words are misleading because these advertisements fail to tell consumers about certain practices of the HMOs, such as capitation,[1] utilization review,[2] and case management.[3] These procedures, contend the plaintiff, diminish the level of health care that doctors provide to consumers in favor of greater profits and are not mentioned in the advertisements. Thereafter, the defendants utilize the large numbers of their subscribers to reduce the amount of medical care those persons receive and as bargaining power, to force specialist physicians into contracts that reduce their fee for the medical services the defendants authorize.

Ford seeks certification of a national class of Board-certified physicians. Specifically, Ford has defined the potential class as[4]:

> all specialist physicians (defined as board-certified specialists) who have contracted with a provider network of one of the

---

1. Capitation refers to the system of compensation for physicians by the HMOs whereby the physical is paid a fixed amount per month per patient assigned to a physician regardless of how many times a month the patient visits the physician's office.

2. Utilization review refers to the process whereby HMOs require authorization for proposed treatments. The proposed treatments are compared against a standardized guide licensed from commercial third party providers.

3. Case management refers to the HMO practice of assigning a nurse to monitor the medical treatment of certain very ill patients to guarantee that the proposed treatment is within standardized guidelines of care.

4. The defendants are opposed to this definition as it represents an amendment of plaintiff's prior class definition, which defendant argues should not be permitted at this time. Moreover, the defendants argue that under this definition, Ford would be excluded from the class as he and his group, the Southwest Bone and Joint Clinic, were contracting providers in defendant NYL-Care's provider network and were paid by capitation. Therefore, the defendants contend that Ford himself would be excluded from the class, leaving no other class representative.

defendants' HMO subscribers ... but including only provider networks in operation since 1992, and excepting physicians who contracted to act as primary care-physicians or who were paid by capitation.

Ford argues that certification of a national class, versus a local or regional class, is appropriate because the policies of the defendants' and the defendants' marketing strategies are conducted on a national level.

### Federal Rule of Civil Procedure 23(a)

■ In order to maintain a class action, a representative suit must comply with the requirements of each of the four subsections of Rule 23(a) and must satisfy the additional requirement of at least one of the three subdivisions of Rule 23(b). *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed.1992), § 4.01, at 4–3. Rule 23(a) of the Fed.R.Civ.P. provides:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) provides:

> (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substan-

tially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The district courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The party seeking the class certification bears the burden of proof. *Applewhite v. Reichhold Chems., Inc.,* 67 F.3d 571, 573 (5th Cir.1995).

The first prerequisite for class certification is numerosity. The defendants do not dispute that Ford has satisfied the numerosity requirement for certification.

Defendants argue that Ford cannot satisfy the typicality requirement of Rule 23(a)(3). Rule 23(a)(3) requires that the party moving for class certification prove typicality of his claims, *i.e.,* that the claims arise from the same event, practice, or course of conduct that gives rise to the claims of other class members. Defendants contend that Ford's Lanham Act claim is particularly ill-suited for class treatment.

■ To prevail on a Lanham Act claim, a plaintiff must show: (i) the statement made by the defendant was literally false, or was likely to mislead or confuse consumers; (ii) there is a tendency to deceive a substantial portion of the intended audience, (iii) the deception is material in that it is likely to influence purchasing decisions; (iv) the advertised goods traveled in interstate commerce; and (v) there is likelihood of injury to the plaintiff in terms of declining sales or loss of goodwill. *Pebble Beach Co. v. Tour 18 I, Ltd.,* 942 F.Supp. 1513, 1562 (S.D.Tex. 1996) (citing *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone– Poulenc Rorer Pharmaceuticals, Inc.,* 19 F.3d 125, 129 (3d Cir.1994)).

■ The Court agrees that plaintiff cannot establish the required element of typicality of claims for the Lanham Act cause of action. To sustain his Lanham Act claim on behalf of the proposed class, plaintiff would have to show that each advertisement is false or has a tendency to deceive the intended audience. This inquiry necessarily depends on whether a particular consumer saw a particular advertisement, whether the consumer was misled by that advertisement, whether the alleged deception caused consumers to join the HMOs in question, and whether a particular physician was harmed by the alleged reduction in visits and fees for a particular patient. These questions, by their nature, are unique because they involve highly specific and individual factors that vary by defendant, advertisement, geographical location, sophistication of the target audience, familiarity of the audience with the HMOs, and the particular physician's particular medical speciality. Given these possible contingencies, each doctor's claim is unique and will depend on the resolution of individualized questions. Because of the existence of these individual questions, there is an absence in typicality between the proposed class members claims.

■ Defendant's next argue that plaintiff's claims are not typical of the class. First, defendants argue that plaintiff is not employed full time as a physician because he works less than forty hours per week and spends a significant period of time filming a fishing show for ESPN–2 Sports Network.

Second, while the income of all of plaintiff's partners has risen during the period between 1992–1996 plaintiff's annual income has declined. Thus, the defendants conclude that plaintiff's claims are not typical of those of the other members of the putative class because many of the putative class members have suffered no injury in that their annual incomes have increased.

The Court agrees with the defendants' analysis of the typicality of plaintiff's claims. Because Dr. Ford's claims do not arise from the same event, practice, or course of conduct as those of the putative members of the class, Dr. Ford is not a typical plaintiff.

The last requirement of Fed.R.Civ.P. 23(a) is that the class representative will fairly and adequately represent the interests of the class. The defendants have gone to great lengths to discredit Dr. Ford's ability to fairly and adequately represent the class. The defendants argue that Dr. Ford lacks adequate knowledge about this litigation or his role as a class representative and Dr. Ford has interests that are antagonistic to other members of the class.

The Court does not agree with the defendants' assessments of Dr. Ford's qualifications as a class representative. The Court determines that Dr. Ford would fairly and adequately represent the class, if a class were appropriate in this case.

Rule 23 of the Federal Rules of Civil Procedure require that in addition to satisfying the prerequisites of Rule 23(a), a party desiring to certify a class must also satisfy at least one of three prerequisites enumerated in Rule 23(b). Defendants argue that Dr. Ford cannot satisfy any of the subsections of Rule 23(b).

### Federal Rule Civil Procedure 23(b)(3)

Rule 23(b)(3) provides:

**Class Actions Maintainable:** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ The Court determines that the questions of law and fact that are relevant to the plaintiff's Lanham Act claims do not predominate over questions affecting individual members. As discussed above, the pertinent inquiry in establishing a violation of the Lanham Act is whether each member of the target audience was misled by a certain advertisement which caused them to join a certain HMO based on the misleading statements. Given that these inquiries are highly individualized, the Court cannot find that the issues common to the class predominate over issues that affect the individual members of the class.

■ Nor can this Court find that the class action is the superior method for disposing of the putative class' claims. Matters pertinent to the consideration of whether a class action is a superior method of conducting litigation are: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (iii) the difficulties likely to be encountered in the management of the class action. In *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998) the court stated that "the most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." A negative value suit is one in which the "stakes to each member [are] too slight to repay the cost of the suit." *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 (7th Cir.), *cert. denied,*

516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995). Because plaintiff's alleged damages are more than $100,000, these damages are substantial. The Court also determines that the damages claims of the individual members of the class would be substantial. Thus, this suit cannot be classified as a "negative value suit."

### Federal Rule Civil Procedure 23(b)(1)(A)

■ Rule 23(b)(1)(A) states that an action may be maintained as a class action if the adjudications of the individual members of the class would create a "risk" of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) is satisfied in the event that inconsistent judgments in separate suits would trap the party opposing the class "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *McBirney v. Autrey,* 106 F.R.D. 240, 245 (N.D.Tex. 1985) (quoting *Walker v. City of Houston,* 341 F.Supp. 1124, 1131 (S.D.Tex.1971)). "In essence, Rule 23(b)(1) is concerned with the prejudicial effect which inconsistent judgments may have on the party opposing the class." *Id.* Because the defendants do not seek the protection of this section, it is not applicable in this case.

The plaintiff has not provided a compelling argument that the entry of several judgments against the defendants in this case would be inconsistent, as contemplated by the Rule. Accordingly, the Court determines that there has been an insufficient showing of risk that the defendants would be unable to comply with judgments for damages or injunctive relief for various claimants.

### Federal Rule of Civil Procedure 23(b)(2)

■ Rule 23(b)(2) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). In order to satisfy the requirements of Fed.R.Civ.P. 23(b)(2), the proposed class action must involve a group harm or a group remedy. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). Plaintiff has failed to establish that the members of the proposed class are "homogeneous and cohesive group," as contemplated by the Rule. *Id.* Rather the testimony adduced at the class certification hearing reveals that certain potential class members are in competition with each other and compete with each other for new patients. This finding negates against a conclusion of homogeneity and cohesiveness.

Further, Rule 23(b)(2) does permit that "monetary relief may be obtained in a(b)(2) class action so long as the predominant relief sought is injunctive or declaratory." *Id.* at 411. The Court determines that while the plaintiff is seeking injunctive relief in this case, it is not the predominate relief sought. Rather, plaintiff seeks monetary relief in the form of actual damages, punitive damages, and attorneys fees. Thus, plaintiff's claims do not qualify for Rule 23(b)(2) certification.

As the plaintiff has failed to satisfy the prerequisites for class certification pursuant to Rule 23 of the federal rules of certification, the Court determines that class certification is not appropriate for the claims in this case.

Therefore, based on the foregoing, the Court hereby

ORDERS that the Motion for Class Certification is DENIED.