**Shelley GRIFFIN, et al., Plaintiffs,**

v.

**GK INTELLIGENT SYSTEMS, INC., et al., Defendants.**

**No. Civ.A. H–98–3847.**

United States District Court, S.D. Texas, Houston Division.

Feb. 16, 2000.

David E. Sharp, Greenberg Peden et al., Houston, TX, William B. Federman, Dreier Baritz et al., Oklahoma City, OK, Roger B. Greenberg, Greenberg Peden et al., Houston, TX, Richard A. Speirs, Zwerling Schachter et al., New York City, for Shelley Griffin, plaintiff.

Ann Ryan Robertson, Attorney at Law, Houston, TX, Jeffrey Lloyd Joyce, Carl Wimberley, Winstead Sechrest & Minick, Houston, TX, Paul R. Bessette, Brobeck Phleger & Harrison, Austin, TX, for GK Intelligent Systems Inc., Gary F. Kimmons, Individually, for Rodney L. ("Rod") Norville, defendants.

William B Federman, Dreier Baritz et al., Oklahoma City, OK, Roger B. Greenberg, Greenberg Peden et al., Houston, TX, Richard A. Speirs, Zwerling Schachter et al., New York City, for Kaylynn Holloway, Charles S. Farrell, Jr., plaintiffs.

## *MEMORANDUM AND ORDER*

ATLAS, District Judge.

This securities fraud litigation is before the Court on Plaintiffs' Motion for Class Certifi-

cation ("Motion") [Doc. # 52].[1] Defendants filed their Opposition to the Motion [Doc. # 75], Plaintiffs filed a Reply [Doc. # 82], and Defendants filed a Surreply [Doc. # 84]. Defendants requested oral argument on Plaintiffs' Motion [Doc. # 86], but Plaintiffs opposed Defendants request as unnecessary [Doc. # 88]. The Court agrees with Plaintiffs that oral argument is unnecessary and **denies** Plaintiffs' Motion based on a careful review of the full record and consideration of the applicable legal authorities.

## I. BACKGROUND

The factual background of this case is set forth fully in the Court's Memorandum and Order entered October 26, 1999 [Doc. # 71] and will be restated herein only to the extent relevant to Plaintiffs' Motion.

Plaintiffs seek class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs define their class to consist of all investors who purchased shares of GK Intelligent Systems, Inc ("GK") between February 10, 1998 and September 14, 1998, inclusive.[2] Plaintiffs propose Shelley Griffin and Charles S. Farrell, Jr. as class representatives. Griffin originally purchased GK stock on April 27, 1998, and sold her shares on July 15, 1998, then purchased other GK shares on August 17, 1998, which she sold on September 3, 1998. Griffin recognized a net profit on her trades. Farrell purchased GK stock on July 21, 1998, and sold his shares on August 13, 1998.

## II. STANDARD FOR CLASS CERTIFICATION UNDER RULE 23

Rule 23(a) of the Federal Rules of Civil Procedure lists four prerequisites to a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a). Additionally, a class action can be maintained under Rule 23(b)(3) only if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED.R.CIV.P. 23(b)(3).

"A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "A district court has wide discretion in deciding whether to certify a proposed class . . . . [s]o long as the district court considers the four Rule 23 criteria. . . ." *Matassarin v. Lynch*, 174 F.3d 549, 559 (5th Cir.1999) (internal citations omitted), *cert. denied*, 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000). "The party seeking certification bears the burden of proof." *Castano*, 84 F.3d at 740.

The Court may look beyond the pleadings to determine whether Plaintiffs have satisfied their burden of proof on the Rule 23 requirements. *Id.* at 744. Indeed, "[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.*

## III. DISCUSSION OF RULE 23(a) REQUIREMENTS

### A. NUMEROSITY

Plaintiffs state in their Reply that they "do not know the exact number of shareholders

---

**1.** Plaintiff's Motion includes only a definition of the proposed class and a request for certification pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

**2.** Plaintiffs proposed class excludes the named Defendants, members of Defendants' immediate family, any family-owned or controlled trust of

the named Defendants, any subsidiary or affiliate of GK and the directors, officers, and employees of GK and their affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

involved during the class period...." Reply, at 6. Plaintiffs assert that as of September 10, 1998, four days before the end of the class period, there were 458 record shareholders. Plaintiffs do not present evidence regarding how many of these 458 shareholders purchased their shares during the class period. Plaintiffs do not present evidence regarding how many of these 458 shareholders are among the group of investors excluded from Plaintiffs' class definition.

The Court finds that Plaintiffs have not satisfied their burden of proof on the numerosity element, but the Court does not base its denial of class certification on Plaintiffs' failure to establish numerosity because Defendants do not object to class certification on this basis.

### B. COMMONALITY

 "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997), *cert. denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998)), *pet. for cert. filed* Dec. 16, 1999. In this case, all class members apparently contend that GK issued false and misleading press releases and provided other false information. Whether the challenged information was false and misleading, and whether it was material, are common questions which satisfy the commonality requirement.

### C. TYPICALITY

 The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id.* In this case, Griffin is not typical of most members of the putative class because she realized a net gain on her GK stock trades.

---

**3.** GK's stock was first listed on AMEX on May 21, 1998.

Additionally, Farrell purchased his stock while it was traded on the American Stock Exchange ("AMEX").[3] As a result, to satisfy the reliance element of his fraud claim, Farrell can rely on the "fraud-on-the-market" presumption based on the AMEX as the purported "impersonal and efficient market." On the other hand, Griffin and other members of the purported class who purchased their shares of GK stock prior to its listing on AMEX must focus on the over-the-counter market for their "fraud-on-the-market" legal theory. Establishing the "fraud-on-the-market" presumption for the over-the-counter market is a more difficult task than establishing the presumption for AMEX.

As a final matter, Griffin sold her original shares on July 15, 1998, less than one week before Farrell purchased his shares. As a result, Griffin necessarily must contend that the stock price at that time was not artificially inflated, while Farrell must attempt to establish that the stock price was, at virtually the same time, artificially inflated.[4] Clearly, different members of the purported class will have "conflicting incentives in shaping the evidence." *See In re Seagate Technology II Securities Litigation*, 843 F.Supp. 1341, 1359 (N.D.Cal.1994).

Based on these differences, the Court concludes that Plaintiffs have not established the typicality element for class certification based on Farrell and Griffin as class representatives.

### D. ADEQUACY

 Rule 23(a)(4) requires a class representative who "will fairly and adequately protect the interests of the class." An individual is not an adequate class representative if he has "so little knowledge of and involvement in the class action that [he] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988).

---

**4.** The Court recognizes that the price of GK stock rose over $5 per share between its close on July 15, 1998 and its opening price on July 21, 1998.

■ Griffin, a high school graduate who has purchased shares in only three companies, was solicited by a friend who was also a friend of lead counsel for Plaintiffs in this case. She does not receive monthly statements from counsel regarding billings, expenses, or the progress of the case. She does not discuss discovery matters with lead counsel. Griffin Depo., Exh. A to Federman Declaration [Doc. # 83], at 98–99. Griffin made a profit on the initial purchase and sale of GK stock during the class period and, as a result, focuses primarily on her second purchase of shares in August 1998. Indeed, Griffin testified in her deposition that as of April 27, 1998, the date she made her first purchase of GK stock, the price of the stock was not artificially inflated. *Id.* at 59. Griffin's position is contrary to the position which must be taken by those members of the putative class who purchased their shares prior to April 27, 1998.

Farrell, who has owned stock in fewer than six companies, was solicited through lead counsel's PSLRA notice on the Internet. Farrell Depo., Exh. B to Federman Declaration, at 18. Prior to reading the Complaint, Farrell was not aware of any of the substantive matters alleged, testifying in his deposition that "it was totally new information to me. I was flabbergasted some of the stuff that was being talked about in the complaint. I had no idea that was going on." *Id.* at 19. The allegations in the complaint and amended complaints in this case "was the information that was brought to light by Mr. Federman when I indicated to him that I wanted to join in this class action." *Id.* at 75. He receives copies of documents after they are filed and is "kept very well up to speed" after counsel "takes any sort of action." *Id.* at 28. Farrell has no agreement with lead counsel regarding the payment of attorneys' fees or costs. *Id.* at 25–27.

Farrell appears singularly interested in recovering his own investment in GK. He appears to believe that he is being proposed as class representative based the fact that "the documents that are filed with the Court have [his] name on them." *Id.* at 22. He

testified in his deposition that if Plaintiffs in this purported class action do not win, he would "probably find some money to go ahead and pursue a single lawsuit against them at that time myself." *Id.* at 26. Farrell also testified that he would like for Shelley Duvall[5] to give him some of his money back because GK paid Duvall "a half a million dollars after I had sold." *Id.* at 81.

Griffin and Farrell were solicited for this lawsuit and have taken little or no supervisory role over lead counsel. They do not participate in litigation decisions, do not receive regular cost/expense information, and they learn of activity in the case when they are copied on matters already completed. Although it is clear that both Griffin and Farrell would like to recover their investment, it is equally clear that they are lending their names to a purported class action solely at the suggestion of lead counsel. "[T]here is substantial question that plaintiffs themselves understand much more than that they were involved in a bad business deal." *See Kelley v. Mid–America Racing Stables, Inc.,* 139 F.R.D. 405, 410 (W.D.Okla.1990). Plaintiffs bear the burden of proof on the adequacy of representation of the proposed class. *Id.* Plaintiffs have failed to carry their burden.

## IV. *DISCUSSION OF RULE 23(b)(3) REQUIREMENTS*

The additional requirements set forth in Rule 23(b)(3) need be discussed only after the Plaintiffs have satisfied the prerequisites to a class action set forth in Rule 23(a). *See* FED.R.CIV.P. 23(b); *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.,* 190 F.R.D. 422, 426–27 (S.D.Tex.1999). For purposes of a complete record, however, the Court will address the Rule 23(b)(3) requirements notwithstanding its conclusion that Plaintiffs have not satisfied their burden to establish each of the four Rule 23(a) prerequisites.

Plaintiffs must establish both elements of Rule 23(b)(3): "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

---

**5.** According to Farrell's deposition testimony, GK "paid Shelley Duvall $500,000, just so she could say she's always been interested in technology to promote GKI." Farrell Depo., at 63.

action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) includes a list of pertinent matters: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

## A. COMMON QUESTIONS OF LAW OR FACT ARE PREDOMINANT

■ Defendants argue that Plaintiffs have not established the predominance of common questions of fact because each investor in the proposed class must prove reliance. "[A] fraud class action cannot be certified when individual reliance will be an issue." *Castano*, 84 F.3d at 745.

Plaintiffs respond that they are entitled to rely on the "fraud-on-the-market" presumption of reliance recognized in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Plaintiffs in their Reply argue for the first time that they are also entitled to rely on the presumption of reliance recognized in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Plaintiffs have failed to establish entitlement to either of these presumptions as a basis for satisfying the predominance requirement for class certification.

### 1. Fraud–on–the–Market Presumption

The fraud-on-the-market theory, recognized by the Supreme Court in *Basic*, creates a presumption of reliance. *See Fine v. American Solar King Corp.*, 919 F.2d 290, 298 (5th Cir.1990), *cert. dismissed*, 502 U.S. 976, 112 S.Ct. 576, 116 L.Ed.2d 601 (1991). The theory is based "on the hypothesis that, *in an open and developed securities market,* the price of a company's stock is determined by the available material information regarding the company and its business." *Id.* at 299 (quoting *Basic*, 485 U.S. at 241–42, 108 S.Ct. 978) (emphasis added).

The Ninth Circuit has developed a five-factor analysis for determining whether the stock at issue was traded in an open and developed market. *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir.1999), *pet. for cert. filed* Oct. 25, 1999. These factors are: (1) the trading volume; (2) the number of securities analysts covering the stock; (3) the presence and number of "market makers"; (4) whether SEC Form S-3 Registration Statements are filed; and (5) rapid reaction of the stock price to public releases of information. *Id.* at 1065. Based on consideration of these factors, the Court concludes that the GK shares traded over-the-counter, as well as those traded on AMEX, were not traded on an open and developed market. As a result, Plaintiffs cannot benefit from the fraud-on-the-market presumption to establish reliance and must instead prove individual reliance.

*Trading Volume.*—In *Basic*, the Supreme Court noted that modern securities markets often involve "millions of shares changing hands daily." *See Basic*, 485 U.S. at 243, 108 S.Ct. 978. Plaintiffs' evidence indicates that during the seven-month class period, there were approximately 17,000 transactions involving 31 million shares of GK stock. This is significantly below the "millions of shares changing hands daily" described by the Supreme Court in *Basic*. Plaintiffs present no evidence of the total trading volume in over-the-counter stocks or on the AMEX. With reference to the AMEX trades, Plaintiffs present no evidence regarding the volume of GK shares traded relative to the volume of other stocks traded on the AMEX.

*Securities Analysts.*—Defendants have presented evidence that there were no securities analysts covering GK stock during the proposed class period. Plaintiffs have presented no evidence to the contrary.

*Market Makers.*—The third factor is whether the stock has market makers and arbitrageurs. Market makers are generally large brokerage houses that trade in a specific number of shares at a specific price. *See O'Neil v. Appel*, 165 F.R.D. 479, 501 (W.D.Mich.1996). Plaintiffs, in Exhibit C to the Federman Declaration, provide evidence

that there were brokerage companies trading in GK stock during the relevant time period.

Initially, none of the companies listed in Plaintiffs' Exhibit C is one of the larger, well-known brokerage houses. Additionally, the most companies reflected in Plaintiffs' exhibit for any month during the proposed class period is twenty-one during May 1998. More market makers (twenty-eight) have been determined insufficient to justify classification of a market as "efficient" for purposes of the fraud-on-the-market presumption. *Id.* at 501. The number of market makers has limited probative value without information regarding "the volume of shares that each market maker committed to trade, the volume of shares they actually traded, and the prices at which they did so." *Id.* at 502.

As a final matter, evidence establishing this factor alone is inadequate as a matter of law to deem the market under consideration "efficient." *See Binder*, 184 F.3d at 1065; *see also O'Neil*, 165 F.R.D. at 502 ("The economic literature has criticized reliance upon the number of market makers as an indicator of efficiency").

*SEC Form S–3 Registration Statement.*—Whether a company is eligible to file an SEC Form S–3 Registration Statement is an "extremely important" factor in determining whether a company's stock trades in an efficient market. *See O'Neil*, 165 F.R.D. at 502 ("Only corporations whose stocks are actively traded and widely followed are allowed to use the S–3 form by the SEC").

GK did not satisfy the criteria necessary to file a Form S–3 during the proposed class period. Although Plaintiffs argue that GK's inability to file the Form S–3 was the result of its failure to file its annual report by the deadline required for Form S–3 qualification, it is undisputed that GK did not qualify to file an SEC Form S–3 Registration Statement.

*Stock Reacts Rapidly to Public Information.*—The final factor is whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an *immediate* response in the stock price." *See Binder*, 184 F.3d at 1065 (emphasis added). Plain-

tiffs' own evidence, however, is that the market for GK stock did not react "immediately" to public releases of information. Griffin testified that GK stock did not react for many months to the February 10, 1998 press release regarding the Capella agreement. Griffin Depo., at 62–63, 69. Griffin's testimony is supported by GK's historical stock price information, which indicates that GK stock price remained relatively stable after the February 10, 1998 release until the end of March 1998. *See* Biles Declaration, Exh. B.

Plaintiffs respond that their claims primarily involve omissions, which would not be immediately reflected in the stock price. As discussed below, however, Plaintiffs' attempt at this point to recharacterize their claims as ones of omission is unavailing.

*Conclusion Regarding Fraud–on–the–Market Presumption.*—Plaintiffs have failed to present evidence which establishes that the over-the-counter market where GK shares were traded during the initial part of the proposed class period was an "efficient" market. Although the AMEX market might be a closer question, Plaintiffs have not presented evidence to satisfy their burden as to this exchange. Plaintiffs are not entitled to the fraud-on-the-market presumption and must each prove individual reliance. The reliance issue predominates over the class issue of whether the statements were materially misleading, and Plaintiffs cannot satisfy the predominance element of the Rule 23(b)(3) requirement.

*Rebuttable Presumption.*—Even were the Court to conclude that Plaintiffs have satisfied their burden to prove that they were entitled to the benefit of the fraud-on-the-market presumption, the presumption is rebuttable. *See Basic*, 485 U.S. at 250, 108 S.Ct. 978. The common class issue does not predominate over the individual rebuttal issue, and Plaintiffs' motion for class certification must be denied.

### 2. *Affiliated Ute* Presumption

In *Affiliated Ute Citizens v. United States*, the Supreme Court held that a plaintiff asserting a securities fraud cause of action under Rule 10b–5 of the Securities Exchange Act does not need to present proof of reli-

ance in cases involving primarily a failure to disclose. *Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. 1456. The *Affiliated Ute* presumption applies only to cases which involve primarily a failure to disclose, not to those involving a positive misrepresentation. *See Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *see also Binder*, 184 F.3d at 1064; *Cox v. Collins*, 7 F.3d 394, 395–96 (4th Cir.1993); *Kirkpatrick*, 827 F.2d at 722; *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 275–76 (N.D.Tex.1990). The *Affiliated Ute* presumption applies only to allegations that the defendant company "failed to disclose any information whatsoever relating to material facts about which [it] had a duty to disclose." *See Steiner*, 734 F.Supp. at 275–76. The *Affiliated Ute* presumption does not apply to claims, such as those presented by Plaintiffs in this case, which are primarily that the defendant company made false statements or made statements which were true, but incomplete. *See id.*

Notwithstanding Plaintiffs' belated attempt to recharacterize their complaint as one involving primarily a failure to disclose, the Second Amended Complaint establishes clearly that this is predominantly a misrepresentation case. According to this pleading, Plaintiffs base their securities fraud claims on (1) a February 10, 1998 press release announcing that GK had a contract when it did not; (2) the April 1998 announcement that Joseph R. Canion had been named GK's Chairman without disclosing Canion's generous compensation package and limited time commitment; and (3) the August 1998 press release misrepresenting that Canion's resignation was for philosophical reasons. In such cases, the *Affiliated Ute* presumption does not apply. *See id.*

### 3. Conclusion Regarding Predominance Requirement

Plaintiffs have failed to establish that they are entitled to presumptions of reliance under either *Affiliated Ute* or the "fraud-on-the-market" theory. As a result, Plaintiffs have not satisfied their burden of proof that the common questions of law or fact predominate over any questions affecting only individual members.

## B. SUPERIORITY OF CLASS ACTION PROCEDURE

■ "The predominance of individual-specific issues relating to the plaintiffs' claims [on the reliance issue] in turn detracts from the superiority of the class action device in resolving these claims." *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998). The Court cannot find from this record that individual trials would create manageability problems. *See Castano*, 84 F.3d at 748. Nor can the Court find on this record that individual trials would create "a judicial crisis." *See id.*

The Court also concludes that a class action is not the superior procedure for this securities fraud lawsuit because class certification skews trial outcomes and "creates insurmountable pressure on defendants to settle, whereas individual trials would not. The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low. These settlements have been referred to as judicial blackmail." *Id.* at 746 (internal citations omitted).

Lastly, the "most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case."[6] *See id.; see also Allison*, 151 F.3d at 420. Plaintiffs claim substantial compensatory and punitive damages, as well as recovery of their expenses, including attorneys' fees. These factors "eliminate financial barriers that might make individual lawsuits unlikely or infeasible." *See Allison*, 151 F.3d at 420 (citing *Castano*, 84 F.3d at 748).

Consideration of the superiority factors leads the Court to conclude that a class action is not "superior to other available

---

6. "A negative value suit is one in which the 'stakes to each member are too slight to repay the cost of the suit.'" *Ford*, 190 F.R.D. 422, 427

(quoting *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.), *cert. denied*, 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995)).

methods for the fair and efficient adjudication of the controversy."

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Plaintiffs have failed to satisfy their burden to establish each of the elements of Rules 23(a) and 23(b)(3). As a result, the Court declines to certify Plaintiffs' complaint as a class action. It is hereby

**ORDERED** that Defendants' Request for Oral Argument [Doc. # 86] and Plaintiffs' Motion for Class Certification [Doc. # 52] are **DENIED.**